IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 07-cv-00650-MSK-MJW

CLINTON R. WHITFIELD,

    Plaintiff,

v.

JOHN E. POTTER, POSTMASTER GENERAL,

    Defendant.

---

**OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

---

**THIS MATTER** comes before the Court pursuant to the Defendant's Motion for Summary Judgment **(# 26)**, the Plaintiff's response **(# 29)**, and the Defendant's reply **(# 30)**.

**FACTS**[1]

---

[1] The factual recitation is derived largely from the Defendant's motion and supporting evidence. The Plaintiff's response to the summary judgment motion makes a variety of factual assertions, but no supporting evidentiary material is attached, nor is there any citation to exhibits appended to the Defendant's motion that would support such assertions.

A party responding to a motion for summary judgment may not simply rest on his pleadings or on bald factual averments unsupported by evidence. Fed. R. Civ. P. 56(e)(2); *BancOklahoma Mort. Corp. v. Capital Title Co.*, 194 F.3d 1089, 1097 (10th Cir. 1999). Rather, the party must support its assertions of fact with affidavits, deposition transcripts, or specific exhibits evidencing the alleged fact. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). The party must specifically cite to and identify the evidentiary material supporting each asserted fact, as the Court will not "comb the record of previously available evidence and make a party's case for it." *Id.* at 672.

Because the Plaintiff has not supported any of his factual averments with citations to supporting evidence, the Court disregards the unsupported factual assertions in his response and considers only those facts established by specific citation to supporting evidence in the Defendant's motion. Nevertheless, as discussed below, the Court views all of those facts in the light most favorable to the Plaintiff.

The Plaintiff (Mr. Whitfield) is black. He began employment with the United States Postal Service in 1994. In 1997, he began filing a series of EEO complaints alleging various acts of discrimination against him. In addition, he regularly wrote letters to various Postal Service managers, officials, and other public representatives, complaining of the treatment he was receiving in the workplace.

In January 2006, Mr. Whitfield submitted an affidavit to an investigator in conjunction with one of his pending EEO charges. That affidavit read, in part, "Management's treatment of me is designed to belittle, frustrate, and push me to the point that I become hostile and physical with them (going postal) . . . ." Shortly after Mr. Whitfield submitted this affidavit, a former postal employee in California went on a shooting spree at a mail sorting facility, resulting in six deaths. Sensitized by the incident in California, local management reviewed Mr. Whitfield's affidavit and became concerned with Mr. Whitfield's reference to "becom[ing] hostile and physical" and "going postal." On February 3, 2006, local management decided to place Mr. Whitfield on "emergency placement," a non-working assignment in which the employee receives full pay after the first two weeks, which are unpaid.

In March 2006, Postal Supervisor Liliane Valks interviewed Mr. Whitfield about his statements. Mr. Whitfield provided Ms. Valks with a series of documents in which he had used the phrase "going postal" or described concerns about engaging in physical violence:

> • A November 2000 letter to his Congressman, in which Mr. Whitfield stated, in part, "Frustration causes people to go 'postal' and hurt others. When people go 'postal,' normally it is the supervisor who has frustrated the employee. However, not only is the supervisor attacked during this moment of rage, it's anyone in the area and that could be me. Eliminating frustrations could produce a safe and enjoyable work environment";

2

- A December 2001 memorandum, in which Mr. Whitfield wrote that "I believe Linda Delancy's and Jessica Cordoba's intentions are to harass and frustrate me to the point that I lose control and assault either of them verbally and physically. Reaching that breaking point, losing control, and then losing my job seems to be their goal. . . I have done everything within my power to maintain control, but I just don't know how much more of this abuse and unprofessional treatment I can take";

- An April 2002 memorandum, in which Mr. Whitfield wrote "I feel as though they Messrs. Jewell and Curry are making a maximum effort to frustrate me to the point that I retaliate against them by either verbally or physically assaulting one of them. . . I feel as though I understand how and why postal employees become so frustrated that they go 'postal' and someone gets hurt";

- A February 2005 letter to a postal manager in which Mr. Whitfield wrote "I believe that Aurora postal management is conspiring to harass me to the point that I resign, or frustrate me to the point that I commit an assault ('go postal') and be removed from the postal service. . . The pressure that I now find myself in at work is unbearable. . . Believe me, I understand why people go postal. Frustration is nothing more than pressure that builds until it explodes. . . People are primed to go postal because of the harassment and abuse and I'm one of them. . . Everyone has a breaking point."

Based on the contents of these letters and Mr. Whitfield's January 2006 affidavit, Ms. Valks concluded that Mr. Whitfield's escalating anger at his managers, coupled with what she believed was a "well-rehearsed statement to deny that he had any intentions of harming himself or others," warranted Mr. Whitfield's removal from the Postal Service. Greg Christ, Manager of Post Office Operations, agreed with Ms. Valks' that Mr. Whitfield's conduct warranted discipline, but declined to adopt Ms. Valks' recommendation of termination. Mr. Christ instead converted Mr. Whitfield's ongoing emergency placement to a 7-day "paper suspension," which was implemented solely by a memorandum placed in Mr. Whitfield's personnel file. Mr. Whitfield returned to work on May 10, 2006, receiving reimbursement of the salary he had lost

during the first two weeks of emergency placement. Shortly thereafter, in settlement of a union grievance, the "paper suspension" was rescinded as well.

On May 16, 2006, Supervisor Linda Delancy decided that the volume of mail did not require employees to work overtime shifts that had been scheduled for May 17, 2006. Ms. Delancy thus advised both Mr. Whitfield, and a white employee, that they would not be required to work the scheduled overtime shift on May 17, a day which both Mr. Whitfield and the white employee were otherwise not scheduled to work.

In July 2006, Mr. Whitfield filed EEO charges, alleging that: (i) the proposed termination, and later, the paper suspension; and (ii) the denial of overtime on May 17, 2006, constituted racial discrimination and unlawful retaliation in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.* and 42 U.S.C. § 1981. On April 2, 2007, Mr. Whitfield commenced the instant action, asserting the same claims.

## ISSUE PRESENTED

The Defendant moves **(# 26)** for summary judgment, arguing: (i) as to the race discrimination claims, Mr. Whitfield cannot establish an adverse employment action, cannot show that any such action occurred in circumstances giving rise to an inference of discrimination, and cannot show that the legitimate, non-discriminatory reasons proffered by the Postal Service for its actions are pretextual; (ii) as to the retaliation claims, Mr. Whitfield cannot show that he suffered any adverse employment action, that there is a causal connection between any such adverse action and protected activity by Mr. Whitfield, and cannot show that the legitimate, non-retaliatory reasons proffered by the Postal Service for its actions are pretextual.

4

## ANALYSIS

### A. Standard of review

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

When the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. Fed. R. Civ. P. 56(b). The burden is then on the respondent to come forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required. Fed. R. Civ. P. 56(e)(2); *see generally Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1116 (10th Cir. 2007). If the respondent fails to produce sufficient competent evidence to establish its claim

or defense, the claim or defense must be dismissed as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

### B. Discrimination claims

Mr. Whitfield asserts claims of race discrimination arising under both Title VII and 42 U.S.C. § 1981. The elements of a claim under either statute are identical. *Carney v. City and County of Denver*, 534 F.3d 1269, 1273 (10th Cir. 2008). Mr. Whitfield must establish a *prima facie* case of discrimination by showing: (i) that he is a member of a protected class, *i.e.* that he is black, (ii) that he was qualified for the position he held; (iii) that he suffered an adverse employment action; and (iv) that the adverse action occurred in circumstances giving rise to an inference of discrimination.[2] *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142-43 (2000); *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 (1993). The burden then shifts to the Defendant to articulate a legitimate, non-discriminatory reason for the adverse action, and the burden then shifts back to Mr. Whitfield to show that the Defendant's proffered reason is a pretext for racial discrimination. *Id.*

---

[2] The articulation of the *prima facie* case has varied from case to case. Sometimes, the four elements are collapsed into three. *See e.g. Carney*, 534 F.3d at 1273 (delineating elements as: "(1) membership in a protected class, (2) adverse employment action, and (3) disparate treatment among similarly situated employees"). The final element of the *prima facie* case is particularly mutable. *Compare Carney, supra.* with *Fischer v. Forestwood Co.,* 525 F.3d 972, 978-79 (10th Cir. 2008) (describing final element as "some additional evidence to support the inference that the employment actions were taken because of a discriminatory motive") *and Sorbo v. United Parcel Service*, 432 F.3d 1169, 1173 (10th Cir. 2005) (final element requires showing of "circumstances giving rise to an inference of discrimination"). For all practical purposes in this case, any of the various formulations of the *prima facie* case would yield the same result.

The Defendant contends first that Mr. Whitfield cannot establish that he was subjected to an adverse employment action. Mr. Whitfield's response is not entirely straightforward,[3] but as best the Court can determine, Mr. Whitfield asserts that the Defendant's correspondence regarding his EEO charge concedes that the issuance of the Notice of Proposed Removal and its subsequent conversion to a 7-day suspension constitutes an adverse employment action. Although Mr. Whitfield's Complaint can be read to suggest that Mr. Whitfield also asserts that the denial of overtime on May 17, 2006 constitutes a separate act of discrimination, the Court has carefully scrutinized Mr. Whitfield's response brief and finds nothing therein that would clearly indicate that Mr. Whitfield proffers that event as a separate adverse employment action.[4] Accordingly, the Court assumes that Mr. Whitfield has abandoned any independent claim based on the denial of overtime.

---

[3] Mr. Whitfield's counsel contends that he "has read and complied with the Practice Standards of this Court . . . governing the formatting and marshaling of this response," *Docket* # 29, n. 1, but inexplicably cites to the Practice Standards of Judge Blackburn. (The Court also notes that the caption of Mr. Whitfield's response bears an outdated case number indicating that this case is assigned to Judge Matsch. *See Docket* # 3.) Mr. Whitfield's response does not comply with either the Practice Standards of Judge Blackburn or of this Court. Among other things, Mr. Whitfield does not separately identify each claim and the elements thereof and does not specifically identify the evidence establishing each element.

[4] At best, Mr. Whitfield makes a cryptic reference that he "was not allowed to do his job." *Docket* # 29 at 7-8. One might assume that this refers to the denial of overtime, a more plausible interpretation is that it refers to Mr. Whitfield's lengthy suspension pending investigation of the comments in his January 2006 affidavit. Notably, Mr. Whitfield's response brief extensively discusses his belief that the Defendant would "'cut and paste' Mr. Whitfield's words" in his affidavit to "manufacture . . . a false crime," but never makes any mention of the word "overtime" or the events of May 16-17, 2006. The Court also notes that, at the time he filed his response, Mr. Whitfield was represented by counsel and thus, the Court need not construe the response as liberally as it would if Mr. Whitfield were *pro se*.

A adverse employment action is one that results in a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits. *Burlington Indus. v. Ellerth*, 524 U.S. 742, 761 (1998). The 10th Circuit liberally defines the phrase "adverse employment action." *Jeffries v. Kansas*, 147 F.3d 1220, 1231-32 (10th Cir.1998). To be an adverse action, the employer's conduct must be materially adverse to the employee's job status. *Wells v. Colo. Dep't of Transp.*, 325 F.3d 1205, 1213 (10th Cir.2003). The Defendants do not appear to dispute that, if implemented, the Notice of Removal or 7-day suspension would constitute an adverse employment action.

However, the Defendant argues that, because the Notice of Removal was not adopted and the 7-day suspension was later rescinded and Mr. Whitfield compensated for his lost wages, Mr. Whitfield was not subjected to an adverse action. The 10th Circuit has deemed a district court's finding that "an employer's decision to reprimand or transfer an employee, if rescinded before the employee suffers a tangible harm, is not an adverse employment action" to be "correct." *Orr v. City of Albuquerque*, 417 F.3d 1144, 1151 n. 7 (10th Cir. 2005). However, the 10th Circuit has also held that "[a]ctions such as suspensions or terminations are by their nature adverse, even if subsequently withdrawn." *Roberts v. Roadway Exp., Inc.*, 149 F.3d 1098, 1104 (10th Cir. 1998).

Faced with an apparent conflict in controlling law, this Court defers to the more specific pronouncement in *Roberts*. Among other things, *Roberts*, which speaks of rescinded "suspensions," is more precisely calibrated to the facts of this case than *Orr*, which involved an employer's retroactive adjustment of policies governing whether employees could use certain categories of paid leave. Accordingly, the Court finds that Mr. Whitfield can establish that the

8

imposition of the 7-day suspension – notwithstanding its subsequent recision – constitutes an adverse employment action.[5]

Next, the Court considers whether Mr. Whitfield can show that the suspension occurred in circumstances giving rise to an inference of discrimination. An employee may establish this element of the *prima facie* case through a variety of means: by showing actions or remarks made by decisionmakers that could be viewed as reflecting discriminatory animus; preferential treatment given to similarly-situated employees outside the protected class; a showing that the timing or sequence of events leading up to the adverse action suggests discrimination, conduct by the employer in contravention of established policies; etc. *See Plotke v. White*, 405 F.3d 1092, 1101 (10th Cir. 2005); *Hysten v. Burlington Northern & Santa Fe RR Co.*, 296 F.3d 1177, 1183 (10th Cir. 2002). The inquiry is necessarily fact-specific; the Court's purpose in adjudicating this element is to ascertain whether the actions by the employer, if otherwise left unexplained, could be found by a preponderance of the evidence to be motivated by discriminatory intent. *Hysten*, 296 F.3d at 1181.

Here, Mr. Whitfield has failed to point to any facts that would warrant an inference that his suspension was based on his race. His response brief attempts to argue that the Defendant offered favorable treatment to similarly-situated employees who were not black,[6] but proceeds to

---

[5]The Court does not find that Ms. Valks' recommendation that Mr. Whitfield be removed constitutes an adverse action. Rather than being adopted and later rescinded like the suspension, the proposed removal was never implemented in the first place. Mr. Whitfield cannot show that he experienced any adverse employment consequences from the unadopted recommendation.

[6]Mr. Whitfield also makes an aborted argument that the Defendant failed to follow Postal Service procedures, but beyond a point heading to this effect and a bare citation to *Hysten*, Mr. Whitfield does not identify the procedures that allegedly applied in this case and the facts that would show that the Defendant deviated from them. The lack of any meaningful argument on

9

destroy that argument by acknowledging that no such "similarly-situated employees" exist. Instead, he alleges simply that "no one else . . . had been treated as poorly as he had been treated." This is insufficient to permit an inference to be drawn that it was Mr. Whitfield's race – as opposed to a myriad of other characteristics – that prompted such poor treatment. Without some evidence that would suggest that Mr. Whitfield's race was one of the factors motivating his suspension, Mr. Whitfield fails to establish a *prima facie* case, and thus, the Defendant is entitled to summary judgment on his race discrimination claims.[7]

**C. Retaliation**

Mr. Whitfield also alleges that he was retaliated against for having engaged in prior EEO activity, in violation of both Title VII and 42 U.S.C. § 1981. As with the race discrimination claims, the analysis governing the retaliation claims under either statute is identical. *Somoza v. University of Denver*, 513 F.3d 1206, 1211 (10th Cir. 2008).

To establish a claim of retaliation, Mr. Whitfield must first establish a *prima facie* case by showing: (i) that he had engaged in protected activity; (ii) that he suffered an adverse employment action; and (iii) that the adverse action is causally-connected to the prior protected activity; the burden then shifts to the Defendant to articulate a legitimate, non-retaliatory reason

---

this point prevents the Court from assessing it, and the Court deems the argument abandoned.

[7]Even assuming Mr. Whitfield survived the *prima facie* stage, the Court would nevertheless grant summary judgment to the Defendant on the race discrimination claims insofar as Mr. Whitfield has made no showing that would suggest that the Defendant's proffered reason for his suspension – *i.e.* the Defendant's belief that Mr. Whitfield's various writings implicitly threatened physical violence against co-workers and management – was a pretext for discrimination. The Mr. Whitfield's pretext argument consists solely of a point heading, a string of characters whose meaning is unknown, and two quotes and citations from caselaw. No factual argument whatsoever is offered.

for its actions, and Mr. Whitfield bears the ultimate burden of proving that the Defendant's proffered reason is a pretext for retaliation. *Carney*, 534 F.3d at 1276; *Fischer v. Forestwood Co.*, 525 F.3d 972, 979 (10th Cir. 2008).

The Defendant contends that Mr. Whitfield cannot establish that he was subjected to an adverse employment action. For purposes of retaliation claims, an adverse employment action need not be an event that has a tangible effect on the terms or conditions of the employee's job, but any action by the employer that might deter reasonable employee from making or supporting a charge of discrimination. *Burlington, Northern & Santa Fe RR Co. v. White*, 548 U.S. 53, 67-68 (2006). In this respect, the adverse employment action element in retaliation cases is broader than in cases involving discrimination.

For the reasons stated previously, Mr. Whitfield's suspension constitutes an adverse employment action for purposes of his retaliation claim. *See also White*, 548 U.S. at 72 (finding 37-day unpaid suspension, later rescinded with backpay restored, to constitute adverse action for retaliation claim). Although Mr. Whitfield does not offer a concrete argument on this point, the Court will also assume, for purposes of this ruling, that the Ms. Valks' decision to recommend Mr. Whitfield's removal might also constitute an adverse employment action. The Court can envision a situation in which a reasonable employee could feel dissuaded from engaging in protected activity if he expected that such activity would prompt calls for his termination, particularly where it is unknown whether that recommendation would be adopted.

Next, the Defendant argues that Mr. Whitfield cannot show a causal connection between his protected activity and the adverse actions against him. Among other things, to establish the causal connection element, Mr. Whitfield must show that the person taking the adverse action

against him knew of his prior protected activity. *Hinds v. Sprint/United Management Co.*, 523 F.3d 1187, 1203 (10th Cir. 2008). The Defendant argues that Mr. Whitfield cannot show that Mr. Christ, in imposing the 7-day suspension, knew of Mr. Whitfield's prior protected activity. Mr. Whitfield's response does not address this point directly. He makes an unsupported assertion that it was "well-known by Defendant" that Mr. Whitfield filed numerous EEO charges, but Mr. Whitfield does not specifically allege that Mr. Christ himself knew of his activities. The Court finds that Mr. Whitfield has failed to carry his burden on this point. A conclusory, unsupported assertion is insufficient to establish Mr. Christ's knowledge of Mr. Whitfield's protected conduct, particularly where Mr. Christ has come forward with his own affidavit disclaiming any knowledge of Mr. Whitfield's protected activity at the time he issued the suspension. Accordingly, the Court finds that Mr. Whitfield has failed to carry his burden of coming forward with evidence that would show that his suspension was causally-connected to his prior protected conduct.

Although Mr. Whitfield does not make a meaningful argument on this issue, the Court nevertheless finds that he <u>can</u> show that the Ms. Valks issued her Notice of Removal with knowledge of Mr. Whitfield's prior EEO activity. Indeed, Ms. Valks' investigation was triggered by an affidavit that Mr. Whitfield had submitted in conjunction with an EEO charge. Beyond raising the decisionmaker's lack of knowledge of Mr. Whitfield's EEO activity, the Defendant does not otherwise challenge Mr. Whitfield's ability to establish the causal connection element of the *prima facie* case, and thus, the Court finds that Mr. Whitfield can establish a *prima facie* case of retaliation with regard to Ms. Valks' Notice of Removal.

However, the Court finds that Mr. Whitfield has not come forward with evidence that would suggest that the Defendant's proffered non-retaliatory reason for Ms. Valks' action – namely, her concern that Mr. Whitfield was implicitly threatening physical violence against his supervisors – was a pretext for retaliation. As discussed above, Mr. Whitfield's response brief contains no meaningful argument on the issue of pretext. In an effort to avoid clear error, the Court has considered the crux of Mr. Whitfield's argument – that the Defendant "doctored" or "edited" or "cut and paste[d]" Mr. Whitfield's writings to "manufacture . . . a false [threat]" in order to take disciplinary action against him. The Court finds this argument without merit. Mr. Whitfield has come forward with no evidence that the Defendant's manipulated his writings in any way; at best, it appears that Postal Service management interpreted Mr. Whitfield's writings to mean something that Mr. Whitfield himself did not intend to convey. The Court cannot say that Ms. Valks' interpretation of Mr. Whitfield's writings as conveying a possible threat of physical violence is unreasonable, even if that is not what Mr. Whitfield intended to convey. An employee alleging discrimination or retaliation must do more than show that the employer made a mistake in ascertaining a certain fact – in this case, Mr. Whitfield's intention to engage in physical violence. *See Riggs*, 497 F.3d at 1119 ("we do not ask whether the employer's reasons were wise, fair, or correct; the relevant inquiry is whether the employer honestly believed its reasons and acted in good faith upon them"). Without a showing that Ms. Valks did not actually believe that Mr. Whitfield's writings conveyed a threat, Mr. Whitfield cannot show that her recommendation that he be removed was pretext for retaliation.

Accordingly, the Defendant is entitled to summary judgment on Mr. Whitfield's retaliation claims.

**CONCLUSION**

For the foregoing reasons, the Defendant's Motion for Summary Judgment **(# 26)** is **GRANTED**. Judgment shall enter in favor of the Defendant on all claims in this case. All remaining motions in this case are denied as moot and all scheduled hearings are hereby vacated.

Dated this 3rd day of October, 2008

                                        **BY THE COURT:**

                                        Marcia S. Krieger
                                        United States District Judge